141 Wis.2d 503 (1987)
415 N.W.2d 564
IN RE the CUSTODY of L.J.G.: G.R.S., Petitioner-Respondent,
v.
J.R.G., Appellant,
M.L.G., Respondent.
No. 86-1197.
Court of Appeals of Wisconsin.
Argued June 3, 1987.
Decided September 17, 1987.
*504 For the appellant there were briefs by Kathleen J. Quinlan and Legal Action of Wisconsin, Inc., and oral argument by Kathleen J. Quinlan.
For the petitioner-respondent there was a brief by Michael M. Cassidy and Schneider Law Office, of McFarland, and oral argument by Michael M. Cassidy.
For the respondent M.L.G., there was a brief by Steven A. Bach, and Cullen, Weston, Pines & Bach, of Madison, guardian ad litem for M.L.G.
Before Gartzke, P.J., Dykman and Eich, JJ.
EICH, J.
J.R.G.[1] appeals from the visitation provisions of an amended judgment awarding custody of her minor child to G., the child's father. The issues are: (1) whether the trial court has authority to limit a noncustodial parent's visitation to visits within the State of Wisconsin; and (2) whether the court abused its discretion in imposing the limitation on the facts of this case and by limiting visitation without a showing of a threat to the child's physical, mental or emotional health.
We hold that the trial court has authority to order in-state visitation in a proper case, and that such a limitation does not impose an unconstitutional restriction on the noncustodial parent's right to travel. We *505 also conclude that the court applied the proper legal standard and did not otherwise abuse its discretion. We therefore affirm.
The facts are not in dispute. The child, L., was born in October, 1981. J. and G. were not married, and L. remained in J.'s physical custody. J. changed her residence several times in the next few years, moving back and forth between Wyoming, Missouri, and Oklahoma. She relied on babysitters for L.'s primary care. Custody soon became an issue between the parents, and in January, 1984, L. began living with G. About a year later, J., who was then living in Oklahoma, came to Wisconsin and commenced legal proceedings to regain custody.
At the final hearing on February 10, 1986, the parties, on the recommendation of the guardian ad litem and the Dane County Family Court Counseling Service, stipulated that G. should be granted legal and physical custody of L. and that J. should be allowed reasonable visitation. A visitation schedule was worked out, but a dispute arose over J.'s request that she be permitted to take L. to Oklahoma for a family celebration. The trial court heard from the parties, the family court counselor, and the guardian ad litem and denied the request.
The trial court's bench decision discussed "special concerns for L.'s development" and the need to be "cautious" to protect her "sense of security." The court concluded:
[F]or now, for May of 1986, the child is very young and the situation is still quite new, and the parties are learning to work together. ...
The prospect of a 13-hour trip to an extended family whom the child is not likely at that age to recognize or have an invested emotional interest in *506 them as individuals is too much, and that is not reasonable visitation at the present time for LJG in light of her history.
....
I also think that the trip is not well planned at this point. The description of what will take place, and where the arrangements are, are not settled; and that concerns me a little bit. I think there are unresolved issues here in JRG's family, and I think she needs time to interact with her family for herself.
....
So that is the reason for limiting the visitation with respect to May of '86. I think that there has to be some rule to follow. ...
Now, obviously if there comes a time when LJG is old enough and her endurance is great enough and a trip ... is planned, I sincerely hope the parties will be able to make those decisions without coming back to court ....
....
So I set that limit, and I will add the contingency that that may be varied subject to the approval of the custodial parent, to solve just exactly the problem I have indicated. If there is a specific trip, specific plans as time goes on, I want the order to be flexible enough that you folks can work it out.
... I have given you the reasons that I think it is inadvisable and ... unreasonable to do the particular trip ... and why visitation should have a fairly clear guideline subject to the agreement of the parties with respect to going outside of the state.
The court's judgment contains the following provision: "All visitation provided for herein is, until the parties agree otherwise or until further order of the *507 Court, to take place only within the State of Wisconsin."

I. AUTHORITY TO LIMIT VISITATION
J.'s challenge is twofold. She argues first that the trial court lacks statutory authority to limit the noncustodial parent to in-state visits. Second, she contends that the effect of such a restriction is to abridge her constitutional rights to travel freely and to be with her child "without unreasonable restriction by the government."
[1]
As to the first, we are satisfied that courts possess the authority to limit visitation to the confines of the state. Matters relating to visitation are committed to the discretion of the trial court. In re Marriage of Biel v. Biel, 114 Wis. 2d 191, 194, 336 N.W.2d 404, 406 (Ct. App. 1983). Generally, visitation is governed by sec. 767.245, Stats., and J. points to one provision of the statute, sec. 767.245(6), which allows the court to deny the custodial parent permission to remove the child from the state upon a showing that it would be against the child's best interests. She argues that because there is no specific statutory provision authorizing the court to limit the noncustodial parent's right to remove the child from the state, the rule of expressio unius est exclusio alterius compels the conclusion that the court cannot impose any geographic limitation on visitation. We disagree.
Under sec. 767.245(1), Stats., noncustodial parents are entitled to reasonable visitation. They do not have an "inviolate right to any particular [visitation] arrangement." Marriage of Long v. Long, 127 Wis. 2d 521, 533, 381 N.W.2d 350, 356 (1986). Under sec. *508 767.245(6) the noncustodial parent has the right to seek to prohibit the custodial parent from removing the child from the state for extended periods of time upon a showing that such a move would not be in the child's best interests. However, we are unwilling to read into that section a legislative intent to deprive the court of its discretionary authority to determine reasonable visitation, for it may be reasonable under some circumstances to limit the situs of visitation to a particular geographic area. Indeed, we consider this to be such a case. J.'s construction of the statute as barring such a limitation would deny courts the power plainly granted by sec. 767.245(1) to reasonably regulate visitation.
[2]
We note, too, that the expressio unius rule, "[a]lthough based upon logic and the working of the human mind ... is not a `Procrustean standard to which all statutory language must be made to conform.'" Columbia Hospital Asso. v. Milwaukee, 35 Wis. 2d 660, 669, 151 N.W.2d 750, 754 (1967), quoting Black on the Interpretation of Laws (2d ed.), 219. Before the rule is applied to a statute, "there should be some evidence [that] the legislature intended its application lest it prevail ... despite the reason for and the spirit of the enactment." Id. There is no indication in sec. 767.245, Stats., or elsewhere that the legislature ever considered whether the noncustodial parent had a right to take the child out of the state, or whether the family court should be denied the authority to so limit or restrict visitation in the exercise of its discretion to impose reasonable regulations on visitation. Section 767.245 does not deny the court the power, reasonably exercised in a proper case, to limit visitation to a particular geographic area.
*509 We also reject J.'s constitutional argument. We agree that the right to travel freely is "a part of the `liberty' of which [a] citizen cannot be deprived without due process of law," Kent v. Dulles, 357 U.S. 116, 125 (1958), but we see no such restriction in the trial court's ruling. J. also points out that "the relationship between a parent and a child is a constitutionally protected right"at least in the context of cases involving termination of parental rights, Barstad v. Frazier, 118 Wis. 2d 549, 556-57, 348 N.W.2d 479, 483 (1984), and removal of children from the parents' custody to state care. Stanley v. Illinois, 405 U.S. 645, 651 (1972). But she has shown no deprivation of due process, nor does she contend that the trial court proceedings were procedurally deficient. Rather, she argues that restricting her visitation to Wisconsin requires her to "choose" between two constitutional rightsher right to travel freely and her right to be with her child.
The judgment does no such thing. J. may travel wherever and whenever she pleases, and she may have reasonable visitation with her child as ordered by the court. While it may be that she cannot exercise both rights contemporaneously, she has offered no authority adopting her position and has not convinced us that the trial court's action was in any sense unconstitutional.

II. ABUSE OF DISCRETION
J. argues first that the trial court used an improper legal standard in reaching its decision. A court abuses its discretion when it proceeds on an erroneous or incorrect view of the law. State ex rel. North v. Goetz, 116 Wis. 2d 239, 245, 342 N.W.2d 747, *510 750 (Ct. App. 1983). J. contends that under sec. 767.245 (1), Stats., the noncustodial parent's visitation may be limited only upon a finding that the child's physical, mental or emotional health is endangered, and that the court erroneously applied a lesser, "best interest of the child" standard in this case.
The trial court did consider the issue in light of the child's best interest, and that is the appropriate standard. Section 767.245(1), Stats., provides that "[a] parent is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical, mental or emotional health." J. contends that the plain import of the statute is that visitation may only be restricted or limited upon a showing that the limitation is necessary to avoid endangering the child's health.
We agree that the statute is clear, but we read it quite differently. It does not, as J.'s argument suggests, allow a noncustodial parent unlimited and unrestricted visitation rights which may be reasonably restricted only upon a showing of danger to the child. By its plain language, it gives the parent a right to visitation, upon such terms and conditions as the court finds reasonable, unless visitation is found to be a danger to the child's health. In other words, unless it is found that visitation would endanger the child's physical, mental or emotional health, the noncustodial parent is entitled to reasonable visitation.
Visitation privileges, like custodial rights themselves, exist to promote the best interests of the child, Marotz v. Marotz, 80 Wis. 2d 477, 486, 259 N.W.2d 524, 529 (1977), and that standard applies to the determination of what is reasonable visitation in a given case. The "endangerment" standard is applicable only to denial of visitation. If visitation present no danger to *511 the child, sec. 767.245 (1), Stats., allows the court to order such reasonable visitation as it finds to be in the child's best interests.
Finally, J. argues that the trial court's ruling was itself an abuse of discretion. Our review of discretionary determinations is limited. We look for reasons to sustain a trial court's discretionary acts, In Matter of Adoption of R.P.R., 98 Wis. 2d 613, 619, 297 N.W.2d 833, 836 (1980), and we will not find an abuse of discretion if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the trial court's action. Howard v. Duersten, 81 Wis. 2d 301, 305, 260 N.W.2d 274, 276 (1977).
[3]
We have quoted the trial court's decision at some length, and it shows that the court considered a variety of factors bearing on L.'s best interests. It proceeded to balance those factors in light of L.'s needs and her parents' desires, and concluded that her interests would be best served by restricting J.'s visitation privileges to Wisconsin until such time as both parents could agree on visitation elsewhere, or until the court could be persuaded that the circumstances had changed to the extent that out-of-state visitation would be in L.'s best interests. Discretion was exercised, and we cannot say on this record that the trial court's ruling lacked a rational basis.
By the Court.Judgment affirmed.
NOTES
[1] For clarity's sake, the parties will be referred to by only their first initials, rather than all three.